Filed 7/15/24  P. v. Troxell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANN O. TROXELL,<br><br>    Defendant and Appellant. | F086745<br><br>(Super. Ct. No. CF79243617)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Petitioner Dann O. Troxell petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187, subd. (a)). The court conducted an evidentiary hearing and found, beyond a reasonable doubt, that petitioner was the actual killer based on petitioner's admissions during his plea colloquy.

On appeal, petitioner contends substantial evidence does not support the trial court's finding that he was the actual killer because his admissions during the plea colloquy established at most that he proximately caused the victim's death, but not that he was the "direct cause of [the victim's] death." (Underlining omitted.)

We reject petitioner's contentions and affirm.

## PROCEDURAL HISTORY[2]

On June 15, 1979, the Fresno County District Attorney filed a first amended information, charging petitioner with the murder of Hatin Bitar (§ 187; count one) on January 26, 1979, and the robbery of Frank H.[3] (§ 211; count two) on January 25, 1979. The information further alleged petitioner had suffered a prior prison term within the meaning of section 667.5, former subdivision (b).

On June 15, 1979, petitioner entered a plea of guilty to both counts and admitted the prior prison term enhancement. The following exchange occurred during the change of plea colloquy:

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

[2] We dispense with a statement of facts because the facts underlying the convictions are not relevant to the issues raised on appeal.

[3] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

"THE COURT: Would you tell me what you did that makes you believe you are guilty of this offense [of murder in the first degree]?

"[PETITIONER]: I shot and killed Hatin Bitar.

"THE COURT: And how did that happen?

"[PETITIONER]: It was in the commission of a robbery.

"THE COURT: You were in a business establishment for the purpose of committing a robbery?

"[PETITIONER]: Yes.

"THE COURT: And what did you do or say after you entered that premises?

"[PETITIONER]: Demanded money from the clerk.

"THE COURT: And in that – and was the clerk the demand was made of, was that this Hatin Bitar?

"[PETITIONER]: No.

"THE COURT: He was someone who owned or worked in the store?

"[PETITIONER]: Yes.

"THE COURT: It was after you made the demand for money that the – he was present or appeared?

"[PETITIONER]: He appeared.

"THE COURT: And what happened then?

"[PETITIONER]: Uh, he grabbed the gun and I turned around and he still had hold of it and it discharged.

"THE COURT: And then you shot him?

"[PETITIONER]: Yeah, when I said discharged I meant fired.

"THE COURT: And this occurred while you were in the process or the attempt to commit the robbery?

"[PETITIONER]: Yes.

"THE COURT:  And this is the purpose that you entered the store or premises for?

"[PETITIONER]:  Yes.

"THE COURT:  And as a result of the gun discharge – now this was a gun you had; is that right?

"[PETITIONER]:  Yes.

"THE COURT:  And this gun was fired by you?

"[PETITIONER]:  Yes.

"THE COURT:  And it struck the – the firing of the gun resulted in the death of Hatin Bitar; is that correct?

"[PETITIONER]:  Yes."

The court then asked if a death certificate was available, and the prosecutor stated it had been filed at the preliminary hearing.  The prosecutor offered the preliminary hearing transcript as an additional factual basis for the plea.  Defense counsel stated the preliminary hearing transcript was unnecessary because there was "no issue about Hatin Bitar's dying."  The court then asked, "Is it stipulated he did die as a result of this firing of the weapon that [petitioner] had when he was attempting to commit the robbery?"  Both counsel so stipulated.  The court asked, "Is that a correct and fair statement, [petitioner]?"  Petitioner responded, "Yes."  Petitioner also confirmed his "understanding and agreement" that Bitar died as a result of the gunshot wound described.

On July 16, 1979, the court sentenced petitioner "for the term prescribed by law," which was 25 years to life, on count 1, plus one additional year for the prior prison term enhancement.  For the robbery conviction, petitioner was sentenced to a concurrent upper-term sentence of five years.

On January 6, 2022, petitioner filed a petition for resentencing pursuant to section 1172.6.  Petitioner included with the petition a declaration stating that he did not intentionally kill Bitar and that the weapon accidentally discharged when Bitar grabbed it.

4.

On February 7, 2022, petitioner filed a second petition for resentencing and included a second declaration containing the same statements. Counsel was appointed to represent petitioner. Petitioner subsequently retained private counsel. The People opposed the petition on the merits, arguing the record of conviction, including the change of plea transcript, established that petitioner was ineligible for resentencing as a matter of law. Defense counsel argued the killing was unintentional and resulted from a supervening cause. The trial court issued an order to show cause. The parties then filed additional briefing of the issue of whether petitioner was the actual killer.

The evidentiary hearing was conducted on June 15, 2023. On the People's request, the court admitted into evidence the change of plea transcript, the probation officer's report, the first amended information, and the sentencing minute order. Petitioner did not present any evidence. The People argued the change of plea transcript demonstrated that petitioner was the actual killer. Defense counsel argued Bitar's conduct was a supervening cause of his own death and, as such, petitioner was not the actual killer.

The court noted petitioner had admitted "that in the course of a robbery, which he admitted committing, he discharged a weapon that inflicted the fatal wound to the victim in this case." The court explained that, "[i]n other cases where there were multiple participants . . . and it was impossible to establish whether the perpetrator was the actual inflictor of the fatal wounds, the issue of being an actual killer became important. That's not the case in the [instant] matter." The court continued: "[Petitioner] admitted to having the gun. He admitted that it went off while it was in his possession and that it killed the victim. He is the actual killer." Accordingly, the court found, beyond a reasonable doubt, that petitioner was guilty of murder under the current law. On that basis, the court found petitioner was ineligible for relief and the petition was denied.

5.

## DISCUSSION

### I.  Section 1172.6 Procedure

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill accomplished this task by adding three separate provisions to the Penal Code.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder.  (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842–843.)  Second, to amend the felony-murder rule, the bill added section 189, subdivision (e), which limits application of the felony-murder rule as further described below.  (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)  Finally, the bill added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above."  (*Gentile*, *supra*, 10 Cal.5th at p. 843.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.)  If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under

6.

California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).)

"Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " ' "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)

## II.     Substantial Evidence Supports the Finding Petitioner Was the Actual Killer

Petitioner contends that the "actual killer" requirement of section 189, subdivision (e)(1) requires that the perpetrator do more than proximately cause the victim's death. He further contends the trial court relied on proximate causation to find that he was the actual killer and therefore ineligible for resentencing. In contrast, petitioner contends he did not "directly cause the death of the victim," and therefore was not the actual killer.

We disagree with petitioner's characterization of the trial court's ruling. The trial court did not rely on proximate causation but determined petitioner was the actual, direct

perpetrator of the victim's death and was therefore the actual killer. As we explain, substantial evidence supports this finding.

### A. "Actual Killer" Requirement

Since the effective date of Senate Bill No. 1437, section 189 subdivision (e) specifies that "[a] participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[4] Thus, for accomplices, section 189, subdivision (e) limits felony-murder liability to those who act with a heightened mental state. (§ 189, subd. (e)(2)–(3).) However, no heightened mental state is required of "actual killer[s]."[5] (§ 189, subd. (e)(1); accord, *People v. Jackson* (2016) 1 Cal.5th 269, 347 [addressing actual killers under § 190.2, subd. (b)].) "As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer,' " because an actual killer remains liable for felony murder after the amendments to section 189. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973.)

---

[4] Additionally, subdivision (f) of section 189 permits felony-murder liability under specified circumstances where the victim is a peace officer.

[5] In this regard, general felony-murder liability for an "actual killer" is now substantially similar to felony-murder special-circumstance liability for an actual killer, which permits imposition of a sentence of death or life without the possibility of parole without requiring the killer act with a heightened mental state. (See § 190.2, subds. (a)(17), (b).) Our discussion therefore relies in part on cases interpreting the "actual killer" requirement of section 190.2, subdivision (b).

"[T]he term 'actual killer' is meant to distinguish the person who actually caused the victim's death, including in circumstances where two or more persons participated in the felony." (*People v. Garcia*, *supra*, 82 Cal.App.5th at p. 968.)  Stated differently, the term is used to describe a person who "personally killed" the victim.  (*People v. Jennings* (1988) 46 Cal.3d 963, 979; accord, *People v. Banks* (2015) 61 Cal.4th 788, 794; *People v. Vang* (2022) 82 Cal.App.5th 64, 88 (*Vang*) [the term "actual killer" is limited to "the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act"].)  Thus, "the meaning of 'actual killer' . . . is literal.  The actual killer is the person who personally kills the victim, whether by shooting, stabbing, or" other means.  (*People v. Garcia* (2020) 46 Cal.App.5th 123, 152.)

By contrast, courts have held that a person who only "commits an act that is the proximate cause of the victim's death" is not an "actual killer."  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 17; see *id.* at pp. 16–18; see also *People v. Garcia*, *supra*, 46 Cal.App.5th at p. 150, fn. 29 ["proximately causing the death of another does not fall within the actual killer prong of section 190.2[, subdivision ](b)"].)  In different contexts, our Supreme Court and various Courts of Appeal have "explained that '[p]roximately causing and personally inflicting harm are two different things.' " (*People v. Garcia*, *supra*, at p. 151 [collecting cases].)

Consistent with these principles, courts have interpreted "actual killer" liability to require that the fatal injury result directly from the actions of the perpetrator.  In *People v. Garcia*, *supra*, 46 Cal.App.5th at pages 134–136, the victim died from probable asphyxiation after duct tape was wrapped around his head, covering nearly his entire face, including his mouth.  During closing argument, the prosecutor argued the jury could find a robbery-murder special circumstance under section 190.2, subdivision (a)(17) true on the ground the defendant was the actual killer, either because he personally participated in taping the victim, or because he gave the tape to a coperpetrator.  Defense counsel argued the jury could not find the defendant was the actual killer based solely on

9.

giving the tape to a coperpetrator. (*People v. Garcia*, at p. 149.) The Court of Appeal determined that "only the person (or people) who placed the duct tape on [the victim's] mouth were actual killers under section 190.2[, subdivision] (b)," and the argument and instructions failed to properly limit actual killer liability to this scenario. (*People v. Garcia*, at p. 150, fn. omitted.)

In *Vang*, *supra*, 82 Cal.App.5th at pages 73–76, the defendant was alleged to have kidnapped a woman who, during the incident, jumped from the defendant's truck, resulting in her death. The Court of Appeal agreed with the defendant that he could not be liable for felony murder under section 189, subdivision (e)(1) as the actual killer because the evidence showed the woman jumped from the truck of her own volition and did not permit any inference that the defendant was the direct cause of death. (*Id.* at pp. 80, 91.)

In *People v. Garcia*, *supra*, 82 Cal.App.5th at pages 966–967 the evidence suggested the victim died from a preexisting medical condition aggravated by the stress of the underlying felony. The Court of Appeal noted that "long-standing case law permits felony-murder liability even when a preexisting medical condition is a substantial factor in causing the death of the victim, as long as it is not the only substantial factor." (*Id.* at p. 968.) The court determined that the record of conviction demonstrated that the petitioner, acting alone, committed the assault that aggravated the medical condition and led to the death. (*Id.* at pp. 970–971.) The court declined to interpret "section 189, subdivision (e) to mean that there is no 'actual killer' for purposes of felony-murder liability where death resulted from a preexisting medical condition aggravated by the stress of the underlying felony." (*Id.* at p. 968.)

## B.     Analysis

The People do not rely on proximate causation to support their claim that substantial evidence supports the trial court's finding that petitioner was the actual killer. Rather, the People argue the court's finding that petitioner was the actual killer is

10.

supported by substantial evidence that petitioner personally committed the act (firing the fatal shot) that actually and directly caused the victim's death. We agree with the People that substantial evidence supports the trial court's finding on this ground. Because the record contains substantial evidence that petitioner actually, personally, and directly killed the victim by shooting him, we need not resolve the precise contours of actual killer liability that is based on a more attenuated cause.

Based on petitioner's admissions, the court found petitioner committed a robbery, during which he discharged the firearm that inflicted the victim's fatal wound. Substantial evidence supports this finding. When prompted to describe the offense, petitioner stated, "I shot and killed Hatin Bitar." Petitioner initially stated that Bitar grabbed the gun and it fired. However, petitioner went on to clarify that petitioner had possession of the gun and petitioner was the one who fired it. The foregoing constitutes substantial evidence that petitioner fired the fatal shot that killed Bitar and was thereby the actual killer.

Petitioner makes much of his claim that Bitar grabbed the gun at the time petitioner fired it. If true, this suggests the shooting of Bitar could have been accidental. But, as stated, no heightened mental state is required for actual killers to be liable for felony murder. (§ 189, subd. (e)(1).) Nor does the fact of Bitar's grabbing the gun suggest petitioner's conduct was merely the proximate cause of Bitar's death. Although Bitar may have grabbed the gun, petitioner fired the fatal bullets. Despite Bitar's conduct, it was petitioner who personally inflicted the harm that caused Bitar's death. (Cf. *People v. Bland* (2002) 28 Cal.4th 313, 337–338 ["If [the] defendant did not fire the bullets that hit the victims, he did not personally inflict, but he may have proximately caused, the harm." (italics omitted)].)

In sum, substantial evidence supports the court's finding that petitioner was the actual killer. Accordingly, petitioner is ineligible for resentencing and the petition was properly denied.

## **DISPOSITION**

The order denying the petition for resentencing is affirmed.

DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


PEÑA, J.